**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 15-40065-01-DDC** |
| **DAIMON S. JACKSON (01),** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Invoking 18 U.S.C. § 3142(i), defendant Daimon S. Jackson has asked the court to grant him temporary release to attend his grandfather's funeral. Doc. 70. His motion reports that his grandfather was found dead in central Topeka, Kansas, on December 13, 2020. The motion also reports that Mr. Jackson's mother was arrested as a suspect in the grandfather's death. The funeral is tomorrow, December 23, 2020, in Topeka—near the place of Mr. Jackson's detention in Leavenworth, Kansas. The motion explains that the deceased grandfather is Mr. Jackson's "closest relative." Doc. 70 at 3. Mr. Jackson provided attachments to his motion that seem to substantiate the close connection defendant claims with his grandfather.

Mr. Jackson correctly argues that section 1342(i) authorizes the court to order temporary release of a detained person if release is warranted by a "compelling reason." *Id.* The court fully understands Mr. Jackson's desire to grieve his grandfather alongside other family members. And in ordinary circumstances, attending a beloved family member's funeral would qualify as a compelling event. But the court must deny the motion because Mr. Jackson's own conduct renders him untrustworthy for temporary release.

Mr. Jackson was scheduled to appear in our court on July 13, 2020, for a final revocation hearing in his supervised release proceedings.  Mr. Jackson's counsel had informed Mr. Jackson that the court likely would impose a custody sentence for Mr. Jackson's violations, if proved or admitted.  Doc. 70 at 1.  Mr. Jackson didn't appear for that July 13 hearing.  Doc. 63.  And nothing suggests some misunderstanding or other uncontrollable event produced his absence.  The court, acting on the government's oral motion, issued a warrant for Mr. Jackson's arrest.  Doc. 64.  More than two months later, a Deputy United States Marshal apprehended Mr. Jackson in Lithonia, Georgia.  Doc. 68.  It's reasonable to infer that Mr. Jackson fled Kansas and hoped to remain at large, free of the custody sentence he apparently anticipated.

All things being equal, the court would prefer for Mr. Jackson to attend his grandfather's funeral.  Grieving as a family undoubtedly has virtues and the court wishes Mr. Jackson could experience those benefits.  But all things aren't always equal, and they're not equal here.  Sometime this past summer, Mr. Jackson chose to leave this forum—Kansas—where his supervised release required him to remain.  *See* Doc. 37 at 4 (standard condition no. 3).  He didn't seek permission to travel from the United States Probation Office or ask the court to modify his conditions to permit the travel, as other defendants properly have done.  *See United States v. Rubaba*, 457 F. Supp. 3d 1083, 1085 (D. Kan. 2020).  The court concludes that Mr. Jackson's flight wasn't inadvertent, temporary, marginal, or something Mr. Jackson promptly tried to rectify on his own.  Instead, as Mr. Jackson told a federal judge in the Northern District of Georgia, he failed to report for his July 20 hearing "so that he could go to Atlanta to pursue a potentially lucrative business opportunity in the music business."  Doc. 65-1 at 7.  The Georgia federal court concluded that this circumstance, even if true, gave rise to a "significant concern that Defendant would appear for further proceedings in Kansas."  *Id.*  In short, Mr. Jackson is

back in Kansas near the place of his grandfather's funeral after two months as a fugitive only because a Deputy United States Marshal found him, took him before a federal judge in another district, and that court compelled Mr. Jackson to return to Kansas.

From these facts, the court concludes that Mr. Jackson represents a risk of flight. This risk, combined with Mr. Jackson's status as an offender with a Criminal History of Category 6 (the highest category recognized by the United States Sentencing Guidelines) (Doc. 61 at 12), disfavors Mr. Jackson's request for temporary release.

**THEREFORE, IT IS HEREBY ORDERED** that defendant Daimon S. Jackson's Amended Motion for Temporary Release from Custody (Doc. 70) is denied.

**IT IS FURTHER ORDERED THAT** defendant Daimon S. Jackson's Motion for Temporary Release from Custody (Doc. 69) is dismissed at moot.

**IT IS SO ORDERED.**

**Dated this 22nd day of December, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**